# EXHIBIT 1

| STATE OF NORTH CAROLINA | File No. 21CVS10950 |
|---|---|
| MECKLENBURG County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff<br>Timothy Mullen | |
|---|---|
| Address<br>4144 Rainbow Hills Dr | **CIVIL SUMMONS**<br>☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| City, State, Zip<br>Hickory, NC 28602 | |
| VERSUS | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s)<br>American Airlines, Inc. | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1<br>American Airlines, Inc.<br>c/o CT Corporation System- Registered Agent<br>160 Mine Lake Ct Ste 200<br>Raleigh, NC 27615 | Name And Address Of Defendant 2 |
|---|---|

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)<br>Daniel C. Lyon<br>Elliot Morgan Parsonage<br>300 E Kingston Ave, Suite 200<br>Charlotte, NC 28203 | Date Issued<br>7-12-21 | Time<br>3:48 ☐ AM ☒ PM |
|---|---|---|
| | Signature | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time<br>☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

| RETURN OF SERVICE |
|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 3/18
© 2018 Administrative Office of the Courts

Case 3:21-cv-00422-GCM   Document 1-1   Filed 08/16/21   Page 3 of 15

NORTH CAROLINA            IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MECKLENBURG COUNTY     2021 JUL 12 P 3: 47     21 CVS 16950

TIMOTHY MULLEN,

     Plaintiff,

v.                                    COMPLAINT

AMERICAN AIRLINES, INC.

     Defendant.

## INTRODUCTION

Timothy Mullen (hereinafter "plaintiff") has instituted this action pursuant to the North Carolina Retaliatory Employment Discrimination Act, N.C.G.S. § 95-241 ("REDA"), and the common law of North Carolina to recover damages for the violation of his protected rights under North Carolina law. In addition, plaintiff seeks treble damages as authorized by N.C.G.S. § 95-243(c)(4), plus reasonable attorneys' fees.

## PARTIES

1.     The plaintiff, Timothy Mullen, 64, is a resident of Catawba County, North Carolina. At all times pertinent to this action, the plaintiff was an "employee" of defendant within the meaning and definition of REDA and North Carolina law.

2.     The defendant American Airlines, Inc. (American Airlines) is organized and incorporated under information and belief pursuant to the laws of the State of Delaware. American Airlines is headquartered in Texas. American Airlines engages in airline travel and related services in North Carolina, the United States, and throughout the world. American Airlines has a Certificate of Authority in North Carolina, and has substantial business operations in Charlotte, North Carolina. At all times pertinent to this action, American Airlines was the "employer" of plaintiff within the meaning and definition of REDA and the common law of the State of North Carolina.

1

Case 3:21-cv-00422-GCM    Document 1-1    Filed 08/16/21    Page 4 of 15

## VENUE

3. Jurisdiction and Venue are proper in Mecklenburg County Superior Court pursuant to N.C.G.S. § 95-243 and N.C.G.S. § 1-82 as Mecklenburg County, North Carolina is where the violations occurred.

## FACTS

4. In or about 1989, plaintiff began employment with a predecessor of American Airlines. Through various acquisitions by American Airlines, plaintiff has been continually employed by American Airlines, or its predecessors, since 1989.

5. Plaintiff has over four decades of experience in aircraft maintenance and over two decades of experience in management of mechanical aviation departments.

6. Plaintiff's position at the time of his termination was as a Line Maintenance Manager, managing approximately sixty mechanics and ten supervisors performing maintenance of aircraft owned and operated by American Airlines or their subsidiaries.

7. Plaintiff was assigned had an office at one of American Airlines' terminal located at Charlotte Douglas International Airport. Plaintiff oversaw and assigned mechanics to work at different locations and hangars at the Charlotte Douglas International Airport where American Airlines stored or kept aircraft.

8. Over the time plaintiff worked for American Airlines, his performance met or exceeded any reasonable expectation of his employer. Plaintiff routinely received commendations for his work, and received periodic bonuses based on the performance of American Airlines overall business operations.

9. Plaintiff was never the subject of any disciplinary action nor was ever put on a performance improvement plan.

10. Prior plaintiff's termination, plaintiff never received a verbal or written warning concerning his job performance.

11. Prior to his termination, plaintiff never received any information from any employee of American Airlines that his performance of his job-related duties needed improvement or deficiencies existed which threatened his termination.

12. For over thirty-one years plaintiff served American Airlines with excellence and dedication, which resulted in the proper maintenance and safe operation of aircraft out of their Charlotte-Douglas International Airport located in Charlotte, North Carolina.

13. Upon information and belief, plaintiff was the oldest Line Maintenance Supervisor out of six employed in his department by American Airlines at the Charlotte-Douglas International Airport location.

## Assault of Plaintiff on May 1, 2020

14. On May 1, 2020, at approximately 07:30 AM plaintiff was approached by lead mechanic Richard Salazar at work in American Airlines' maintenance "ready room".

15. Plaintiff, and the employees he supervised, routinely gathered in this area in the morning to go over job duties and tasks for their assigned shift.

16. Mr. Salazar was a subordinate of plaintiff, and plaintiff served as Salazar's direct manager. As a part of plaintiff's job duties, plaintiff was required to provide a scope of work to the mechanics at various locations at the airport to work on aircraft needing maintenance.

17. Mr. Salazar, as a lead mechanic, supervised a crew of American Airline employees assigned to him.

18. Mr. Salazar requested that he and his crew not have to work on storage aircraft, which was located on the other side of the airport. Mr. Salazar requested that other mechanics or employees complete the assigned tasks.

19. Plaintiff responded that for consistency and safety purposes, he would not make exceptions or allow Salazar to change his work assignment.

20. Plaintiff further requested to see the list of aircraft Mr. Salazar and his crew were assigned to work.

21. Mr. Salazar became enraged and yelled to plaintiff *"Fuck you, I am not showing you anything."* Mr. Salazar preceded to crumble up and throw his assigned aircraft list in the trash in front of colleagues and his crew.

22. Mr. Salazar then yelled he was *"going over your (plaintiff's) fucking head"* and walked away from plaintiff fuming in anger.

23. Plaintiff was taken aback and shocked by Mr. Salazar's language and conduct, which was in blatant violation of American Airline's policies.

24. Mr. Salazar's proceeded to walk away from the plaintiff towards the bathroom. Upon information and belief, Mr. Salazar continued shouting to a senior manager that he was tired of plaintiff's *"bullshit"* and continued complaining about plaintiff.

25. Mr. Salazar was enraged, and his yelling and cursing could be heard throughout the area where plaintiff and other employees had gathered.

3

26. Plaintiff allowed a moment for Mr. Salazar to compose himself and asked another employee to help calm down Mr. Salazar to avoid further escalation.

27. A short time later, plaintiff approached Mr. Salazar, who was talking with a member of management, to discuss Mr. Salazar's inappropriate conduct and language.

28. Plaintiff started to inform Mr. Salazar not to ever talk or conduct himself in that manner again, especially in the presence of Mr. Salazar's crew which were assigned to his supervision.

29. Plaintiff wished to verbally address the blatant insubordination and policy violations of Mr. Salazar, and the impact his actions had on colleagues and Mr. Salazar's subordinates.

30. Shortly after plaintiff approached him, Mr. Salazar lunged forward with both his hands and his body weight striking plaintiff in the chest. Plaintiff was forced backwards and became unsteady on his feet.

31. Mr. Salazar had to be physically restrained from further assault on plaintiff and was pulled away from further violence towards plaintiff by Joseph Venezia, American Airlines Line Maintenance Senior Manager.

32. Mr. Venezia was plaintiff's direct manager.

33. Plaintiff requested Mr. Salazar's work identification pursuant to plaintiff's training and the policies of American Airlines. Plaintiff walked away in an attempt to avoid further physical aggression from Mr. Salazar and protect against further attack.

34. During the course of plaintiff's employment with American Airlines, plaintiff was informed by Mr. Salazar that he had previously been in a violent altercation with an employee at work where Mr. Salazar punched an employee while employed with American Airlines or its predecessors.

35. Mr. Salazar informed that following the violent interaction with another employee, Mr. Salazar was reassigned or relocated to work at the airport in Charlotte to American Airlines or its predecessors.

36. Mr. Salazar was escorted from the area, told to retrieve his belongings from his locker, and leave work.

37. Mr. Salazar's statements and assault of plaintiff were in direct violation of American Airlines policies, including policies against insubordination and "zero tolerance" of violence or fighting in the workplace.

38. Mr. Salazar's actions toward plaintiff on May 1, 2020, were a blatant violation of American Airlines' Rules of Conduct and Work Environment Policy regarding safety in the workplace.

39. Following the incident, plaintiff was approached by colleagues and employees concerned about the incident and Mr. Salazar's violent conduct towards plaintiff.

40. Approximately an hour after the incident, plaintiff was approached by Mr. Venezia in plaintiff's office. Plaintiff explained that he was *"shaken up"* after the physical assault and concerned about the continuing to work with Mr. Salazar.

41. During the conversation Mr. Venezia stated plaintiff *"did nothing wrong"* related to his interactions with Mr. Salazar.

### Report of May 1, 2020, Assault to American Airlines and Plaintiff's Participation in the Subsequent Investigation

42. Pursuant to American Airlines policies, and in order to initiate an investigation, plaintiff wrote and signed a statement regarding the incident with Mr. Salazar on May 1, 2020.

43. Plaintiff and colleagues discussed whether plaintiff should file a police report related to the assault by Mr. Salazar, given the violent nature of the incident and Mr. Salazar's actions.

44. Plaintiff and his colleagues discussed whether there was an ongoing threat to plaintiff's physical safety, or colleagues, in the workplace.

45. Plaintiff's colleagues and employees of American Airlines were aware of Mr. Salazar's confrontational nature and propensity to become argumentative or aggressive with fellow employees.

46. American Airlines management asked plaintiff after the incident how plaintiff *"wanted to handle"* Mr. Salazar's assault of plaintiff.

47. Plaintiff informed American Airline's management that he believed Mr. Salazar should be terminated for violations of policies and law, including workplace safety, violence, and the ongoing threat posed by Mr. Salazar to himself and other employees.

48. Plaintiff proceeded to write a signed statement of the incident, detailing the assault.

49. It was clear to Mr. Mullen that members of American Airlines management were unhappy with plaintiff's answer.

50. In the days following the May 1, 2020, assault, plaintiff was contacted via text message by Mr. Salazar requesting to meet plaintiff in the employee parking lot.

5

51. Plaintiff informed American Airline's management, including his direct manager, regarding the text message from Mr. Salazar.

52. Plaintiff further informed American Airlines management he did not want to meet Mr. Salazar since plaintiff feared was unsure of Mr. Salazar's notice and was concerned about further aggressive or violent behavior from Salazar.

53. Plaintiff, as Mr. Salazar's direct supervisor and pursuant to American Airlines policies, prepared a termination notice for Mr. Salazar based on the May 1, 2020, incident on or about May 5, 2020.

54. Plaintiff was informed that the termination notice would be reviewed in the course of the investigation of the May 1, 2020, assault by American Airlines.

55. Upon information and belief, American Airlines management wished to allow Mr. Salazar to retire in lieu of termination despite Mr. Salazar's assault and blatant violations of American Airline's policies and North Carolina law.

56. Following an investigation, Mr. Salazar was allowed to retire in lieu of termination from employment with American Airlines in or about Mid-May 2020.

### Discriminatory Treatment and Retaliation toward Plaintiff by American Airlines

57. Shortly following the reporting of the May 1, 2020, incident plaintiff began to be excluded from meetings with management that he was previously invited to and directly involved in.

58. Plaintiff began to have job duties and responsibilities taken away from him by American Airlines management. Plaintiff was told he was "*not needed*" in meetings or duties assigned to others.

59. Plaintiff was restricted from access to parts of American Airlines' computer and monitoring systems plaintiff used prior to the May 1, 2020, assault.

60. Plaintiff's questions and inquiries regarding work-related issues or tasks were ignored by his supervisors and members of management.

61. On or about May 30, 2020, plaintiff was approached by Mike Annan, Director of Charlotte Line Maintenance for American Airlines, regarding when plaintiff wanted to retire.

62. Plaintiff responded that he intended to work for years to come and had no plans for retirement in the immediate future.

6

63. Mr. Annan pressed plaintiff about retirement, stating that plaintiff was financially able to retire. Plaintiff refuted the statement from Mr. Annan and was emphatic that he wished to continue working for years to come.

64. Over the next several weeks plaintiff was continually asked when he planned to retire and how long plaintiff intended to work, including again on or about June 19, 2020, by Mike Annan and other members of American Airlines' management.

65. Plaintiff informed each time he was asked about retirement that he planned to continue working for the foreseeable future, and at least until plaintiff was seventy years of age.

### Plaintiff's Unlawful Termination

66. On or about June 27, 2020, plaintiff went into Mr. Annan's office to discuss why plaintiff was being ignored and excluded at work over the past several weeks.

67. Plaintiff was informed in that meeting by Mr. Annan that plaintiff "*did not make the cut*" related to upcoming terminations by American Airlines which would be announced at the end of June 2020.

68. When plaintiff directly asked Mr. Annan if plaintiff's termination was related to the May 1, 2020, assault or his subsequent reporting and participation in the investigation leading to Mr. Salazar's separation of employment, Mr. Annan responded that it did.

69. Plaintiff was informed American Airlines management did not like the way plaintiff "*handled*" the May 1, 2020, assault and his participation in the investigation that followed.

70. On or about June 30, 2020, plaintiff was informed his job was ending as a result of the Covid-19 pandemic and the impact on American Airlines' business operation.

71. American Airlines' assertions on June 30, 2020, that plaintiff's job was ending as a result of the Covid-19 pandemic and impacts to business operations were false and pretextual.

72. Plaintiff was the oldest, and only Line Maintenance Manager of six individuals serving in that role terminated from his position at American Airlines' Charlotte-Douglas International Airport location.

73. Plaintiff was instructed not to report to work following June 30, 2020, and that his job duties, and benefits as an employee of American Airlines, were ending on or about June 30, 2020.

74. Subsequent to plaintiff's removal from his position, plaintiff's role and job duties were replaced almost immediately by a substantially younger employee with less-experience than plaintiff in or about July 2020.

75. The substantially younger employee was relocated from another American Airlines location to American Airlines Charlotte location at the direction of American Airlines' management.

76. Upon information and belief, the substantially younger employee began working out of plaintiff's old office, performing the same or similar job duties and functions as plaintiff performed as a Line Maintenance Manager.

## ADMINISTRATIVE REMEDIES

77. Plaintiff filed a complaint with the NCDOL for violations of REDA on July 21, 2020, related to discrimination and retaliation for a health and safety issue plaintiff reported in the workplace. Plaintiff's complaint mentioned that he was assaulted by a co-worker. (File No. 55838). Plaintiff supplemented his complaint on March 26, 2021, for File No. 55838.

78. Following an investigation, the NCDOL issued a Right to Sue for File No. 55838 on April 14, 2021. Plaintiff has complied with all procedural prerequisites to filing this claim.

## FIRST CLAIM FOR RELIEF
(Violation of REDA by American Airlines)

79. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

80. American Airlines employed more than 15 employees at all relevant times.

81. REDA prohibits employers from taking retaliatory action against an employee for making a claim or complaint or initiating any inquiry, investigation, inspection, proceeding, or other action with respect to the Occupational Safety and Health Act of North Carolina (OSHA), N.C.G.S. § 95-126 *et seq.* See N.C.G.S. § 95-241(a). Retaliatory action includes but is not limited to discharge, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment.

82. Plaintiff engaged in protected activity by: reporting to American Airlines that he was assaulted by an employee at work; providing a written statement regarding the assault; reporting to management that the Mr. Salazar was a safety threat; initiating an investigation into a workplace safety issues; participating in an investigation into workplace safety issues involving physical violence; and reporting that he had safety concerns regarding subsequent violent encounters with the individual that assaulted him.

83. American Airlines violated REDA by terminating plaintiff because he complained internally to American Airlines regarding workplace safety issues and engaged in the protected activity as described above.

84. As a proximate result of American Airlines' conduct, plaintiff has suffered damages including, but not limited to: lost wages, severe emotional distress, anxiety, humiliation, medical expenses, and other compensatory damages in a sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

85. American Airlines' actions were done in bad faith, maliciously, willfully, wantonly, or in a manner that demonstrates a reckless disregard for plaintiff's rights. As a result of American Airlines' conduct, plaintiff is entitled to recover treble damages from American Airlines' pursuant to N.C.G.S. § 95-243(c)(4).

## SECOND CLAIM FOR RELIEF
(Wrongful Discharge in Violation of North Carolina Public Policy by American Airlines)

86. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

87. The public policy of the State of North Carolina, as set forth in the Occupational Safety and Health Act of North Carolina (OSHA), N.C.G.S. § 95-126, prohibits employers from taking retaliatory action against an employee who reports safety and health concerns, who refuses to engage in conduct that would violate said statute, or who is a victim of a workplace violence incident.

88. American Airlines violated this public by terminating plaintiff after:

   a. he was a victim of a workplace violence incident;

   b. he reported that an employee assaulted plaintiff at work, as this was a safety and health concern;

   c. he reported that the was concerned about potential safety concerns involving the employee that assaulted him.

Such employer conduct has a tendency to be injurious to the public policy of North Carolina and to the public good.

89. As a proximate result of American Airlines' wrongful conduct, plaintiff has suffered lost income, emotional distress, anxiety, humiliation, and expenses, and other damages and is entitled to recover compensatory damages in an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

90. American Airlines' actions were done maliciously, willfully, or wantonly and in a manner that demonstrates a reckless disregard for plaintiff's rights. American Airlines' officers, managers, and directors participated in and condoned the conduct described above. As a result, plaintiff is entitled to recover punitive damages from American Airlines pursuant to N.C.G.S. § 1D-15.

## THIRD CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of North Carolina Public Policy by American Airlines)

91. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

92. The public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, mandates that employers of fifteen or more employees shall not discriminate on the basis of age. At all times pertinent to this claim, defendant employed in excess of fifteen employees.

93. As stated above, plaintiff was a member of a protected age class, who was, at the time of her termination, consistently performing at a level higher than substantially younger employees who were similarly situated; and as a result of plaintiff's termination, substantially younger, less experienced and less qualified employees received favorable treatment, assuming his duties while performing at a lower level than plaintiff.

94. Defendant's reasons for its termination of plaintiff were pretextual, and unworthy of belief.

95. Defendant wrongfully and intentionally discriminated against plaintiff because of his age in violation of the public policy of North Carolina, as follows:

   a. In terminating plaintiff's employment;

   b. In retaining younger, less qualified, and less experienced employees at the time of plaintiff's termination.

Such employer conduct has a tendency to be injurious to the public policy of North Carolina and to the public good.

96. As a proximate result of American Airlines' wrongful conduct, plaintiff has suffered lost income, emotional distress, anxiety, humiliation, and expenses, and other damages and is entitled to recover compensatory damages in an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

97. American Airlines' actions were done maliciously, willfully, or wantonly and in a manner that demonstrates a reckless disregard for plaintiff's rights. American Airlines' officers, managers, and directors participated in and condoned the conduct described above. As a result, plaintiff is entitled to recover punitive damages from American Airlines pursuant to N.C.G.S. § 1D-15.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of North Carola Public Policy by American Airlines)

98. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

99. The public policy of the State of North Carolina, as set forth in REDA, prohibits employers from taking retaliatory action against an employee who reports safety and health concerns or refuses to engage in conduct that would violate REDA.

100. American Airlines violated this public by terminating plaintiff after:

   a. he was a victim of a workplace violence incident;

   b. he reported that an employee assaulted plaintiff at work, as this was a safety and health concern;

   c. he reported that the was concerned about potential future safety concerns involving the employee that assaulted him.

Such employer conduct has a tendency to be injurious to the public policy of North Carolina to the public good.

101. As a proximate result of American Airlines' wrongful conduct, plaintiff has suffered lost income, emotional distress, anxiety, humiliation, and expenses, and other damages and is entitled to recover compensatory damages in an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

102. American Airlines' actions were done maliciously, willfully, or wantonly and in a manner that demonstrates a reckless disregard for plaintiff's rights. American Airlines' officers, managers, and directors participated in and condoned the conduct described above. As a result, plaintiff is entitled to recover punitive damages from American Airlines pursuant to N.C.G.S. § 1D-15.

## PRAYER FOR RELIEF

The plaintiff requests the following relief:

(1)     That plaintiff be reinstated to his position with defendant, with back pay and all benefits and seniority rights;

(2)     That plaintiff recover of the defendant compensatory damages in an amount in excess of $100,000.00.

(3)     That plaintiff recover punitive damages in an amount to be determined by the jury;

(4)     That plaintiff recovers the costs of this action, including reasonable attorneys' fees for his representation herein as required by N.C.G.S. § 95-243(c).

(5)     That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

(6)     That this Court grant such other relief as it deems just and appropriate.

Pursuant to Rule 38(b) of the North Carolina Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This is 12nd day of July, 2021.

/s/ Daniel Lyon
Daniel Lyon (43828)
Attorney for Plaintiff
ELLIOT MORGAN PARSONAGE, PLLC
300 E. Kingston Ave.
Suite 200
Charlotte, NC 28203
Telephone: (704) 724-2828
Email: dlyon@emplawfirm.com